UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Thomas Curtis Hamilton, # 161339, | ) C/A No. 5:13-2506-MGL-KDW |
| | ) |
| Petitioner, | ) |
| | ) |
| | ) REPORT AND RECOMMENDATION |
| vs. | ) |
| | ) |
| Warden, Lieber Correctional Institution, | ) |
| | ) |
| Respondent. | ) |

_____

Thomas Curtis Hamilton ("Petitioner"), a state prisoner, filed this pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF No. 28, 29. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 30. Petitioner filed a Response in opposition to Respondent's Motion. ECF No. 40. Respondent did not file a reply to Petitioner's Response. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment be granted.

I.      Procedural History

Petitioner is currently incarcerated at Lieber Correctional Institution, part of the South Carolina Department of Corrections prison system. Pet. 1, ECF No. 1. In November 2004, a Charleston County Grand Jury indicted Petitioner on one count of larceny (with a property

enhancement) and one count of first-degree burglary. App. 220-23.[1] A jury trial on the indictments was conducted before Judge Knox McMahon in Charleston, South Carolina on June 5 and 6, 2006. App. 1-221. Attorneys Martha Kent Jenkinson [now Runey] and W. Ted Smith represented Petitioner and Assistant Solicitors James P. Stack and D. Bruce Durant represented the State during the trial. App.1. The jury convicted Petitioner on both charges. App. 208. Petitioner was sentenced to a mandatory life sentence without the possibility of parole on the burglary conviction and was given a concurrent five-year sentence on the larceny conviction. App. 217.

Chief Appellate Defender Joseph L. Savitz , III perfected Petitioner's direct appeal to the South Carolina Court of Appeals, filed an *Anders* brief on Petitioner's behalf,[2] *See Anders v. California*, 386 U.S. 738 (1967) (appointed appellate counsel may move to withdraw from representation after certifying a belief that the direct appeal that counsel filed is without merit). and moved to be relieved from representation. ECF No. 29-3 at 8. The only point appellate counsel raised in the brief was,

> The trial judge committed reversible error by allowing the victim to identify Hamilton as the perpetrator since this identification was the product of an unduly suggestive show-up.

*Id*. at 4. The South Carolina Court of Appeals considered the appeal without oral argument, dismissed the appeal, and granted counsel's motion to be relieved from representation in a one-paragraph, unpublished opinion dated October 7, 2009. ECF No. 29-4; *see State v. Hamilton*, No. 2009-UP-448 (S.C. Ct. App. Oct. 7, 2009).   Petitioner filed a post-conviction relief ("PCR")

---

[1] Citations to "App." refer to the appendix of the record that was before the PCR court. It is on the docket of this case at ECF No. 29-1 and 29-2.

[2] *See Anders v. California*, 386 U.S. 738 (1967) (appointed appellate counsel may move to withdraw from representation after certifying a belief that the direct appeal filed is without merit).

application in the Charleston County Court of Common Pleas on September 17, 2010, App. 225-30,

raising the following points (quoted verbatim):

> Ineffective Assistance of Counsel . . . Ineffective Assistance of Counsel . . . Due
> Process Violation . . . Trial counsel was ineffective by failing to move for a
> continuance, her failure violated applicant['s] right to the Sixth Amendment
> Confrontation Clause, Trial counsel was ineffective by refusing and failing to request
> curative instruction when prosecutor commented before the jury that applicant had
> 2 priors for burglary . . . ."

App. 227; *see Hamilton v. State*, No. 2010-CP-7619.

The State's return to the PCR application was filed on February 15, 2011. App. 232-35. An

evidentiary hearing was held on September 14, 2011 in Charleston County before the Honorable

Deadra L. Jefferson. App. 238. Edward K. Pritchard, III, Esq., represented Petitioner in the action,

and Assistant Attorney General Matthew J. Friedman represented the State. App. 238. Petitioner and

his trial counsel, Martha Kent Runey ("trial counsel"), testified at the hearing. App. 239.

Petitioner's trial counsel testified that she met with Petitioner at least three times before his

trial began, App. 257, and that he was offered two different plea deals: one for a fifteen-year

sentence and one that would have him plead to two property-crime enhancements, and which would

probably have resulted in sentences from three to ten years. App. 249-51. Trial counsel stated that

the fifteen-year plea offer had been rejected before she took over Petitioner's defense, but that she

informed him about the second plea offer that probably would have resulted in a maximum ten-year

sentence. App. 250. She stated that Petitioner was "confused" about whether he had already pleaded

to the property enhancements in municipal court, but that she was able to determine that he had not

done so. App. 251-53, 259-60. Although trial counsel testified that she had no personal memory of

whether she conveyed the clarified information about his municipal-court plea to Petitioner, she

referred to her notes and stated that they indicated that Petitioner did not want to enter a plea in the

3

case, so they went to trial. App. 252, 259. On cross examination, trial counsel testified that she communicated the second plea offer to Petitioner and that it was his decision to refuse it. App. 259. Trial counsel stated that the issue of the victim's identification of Petitioner as the person who burglarized his home was the "best" issue for the defense because there "were certainly discrepancies" in the description the victim gave, the way Petitioner looked at the time of his arrest, and the "suggestive" manner in which Petitioner was presented to the victim for identification at the place of Petitioner's apprehension on a different street from the location of the burglary. App. 248-49, 254. Counsel testified that a *Neil v. Biggers* hearing was conducted on the identification issue.[3] App. 248. She explained her decision not to request a continuance when she learned that the police officer (Hargrove) who witnessed the identification was out of state by stating that she did not believe that his testimony was necessary. App. 255. Trial counsel also indicated that she did not object to or request a curative instruction about the prosecutor's mention of two of Petitioner's previous burglary convictions to the jury because, under South Carolina law, such references were not objectionable. She stated that such references were not improper because the prosecutor had to prove Petitioner's prior record in order to convict Petitioner on a first-degree burglary charge that carried a mandatory life sentence without parole. App. 256.

In his PCR testimony, Petitioner stated that he was "not involved in the burglary." App. 261. He testified that he met with trial counsel one time before his trial. App. 262. Regarding the two plea offers, Petitioner testified that he rejected the first offer of a fifteen-year sentence, but that he "didn't really understand what [trial counsel] was talking about" with regard to the second offer. App. 263.

---

[3] *See Neil v. Biggers*, 409 U.S. 188, 198-99 (1972) (establishing totality-of-circumstances standard for court's consideration of admissibility of an identification obtained as a result of a suggestive confrontation).

He testified that had he understood that he would probably get a three-year sentence and serve eighteen months under the second offer, he would have taken it. App. 264. Petitioner testified that the second offer did not have a "set time" attached to it regarding sentencing and that he decided to reject the offer. App. 269. Petitioner also testified that he asked trial counsel where Officer Hargrove was when he did not appear in court, but that counsel told him "just hold up, I got it." App. 265. Petitioner also testified about how he was stopped by the police and held there until he was identified by the burglary victim. App. 266-68. Petitioner testified that he was in the area because he was talking to a person about a job, but that the police did not investigate the situation when he told them about why he was in the area. App. 268.

On October 10, 2011, the PCR court issued an order dismissing Petitioner's PCR application. App. 287-95. The PCR court issued the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon his or her credibility. This Court has weighed the testimony accordingly. Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

The Applicant testified he only met with counsel once before the trial. He testified he rejected the first plea offer for fifteen (15) years. He asserted the second offer was to dismiss the first degree burglary charge, but he did not understand what counsel was talking about in regards to the property crime enhancement. Applicant also rejected this plea offer. Applicant testified counsel did not investigate his alibi defense. He admitted it was his decision to reject both plea offers.

Trial counsel testified she met with Applicant at least three (3) times prior to trial. She testified she was appointed in September 2005, which was about nine (9) months prior to trial. Counsel testified she discussed with Applicant the elements of the offenses and potential defenses. She testified she challenged the victim's identification of Applicant at trial in a Neil v. Biggers hearing. Counsel testified Applicant's defense was that he did not do it. She asserted the charges were

5

upgraded from burglary, second degree to burglary, first degree based on Applicant's two (2) prior burglary convictions.

Counsel testified Applicant rejected the first plea offer of fifteen (15) years. She asserted the solicitor subsequently offered to dismiss the burglary, first degree in exchange for Applicant's plea to both property crime enhancements, which each carried a maximum of ten (10) years. Counsel contended it was Applicant's decision to reject both offers. She testified Applicant thought he already pled guilty to property crime enhancement in municipal court, but she called the city court and learned he had only gone to court for simple assault. She also learned Applicant had a charge for shoplifting pending in the municipal court. Counsel asserted she had the solicitor bring Applicant back the next day. She testified she did not recall all of the details, but her notes reflect Applicant still did not want to plead guilty.

Counsel asserted Applicant's best defense was identification because there were some discrepancies. She testified she subpoenaed Officer Hargrave, as was her general practice to subpoena all officers in a case, but he did not show up because he was out of state. She asserted she did not move for a continuance because she did not think she needed the officer, as his testimony was not dispositive on the issue. Counsel testified she disputed the two (2) prior burglary convictions, and the State called an employee of the clerk of court's office and a fingerprint expert from SLED to verify the prior convictions. Counsel was able to cross-examine these witnesses. She testified that while the two (2) prior convictions were mentioned, it was not improper for the State to do so under state law, as it was an element of the offense. She also testified the trial court gave a jury charge on burglary, second degree.

### Ineffective Assistance of Counsel

The Applicant alleges he received ineffective assistance of counsel. In a post-conviction relief action, the applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; Butler v. State, 286 S.C. 441, 442, 334 S.E.2d 813, 814 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984); Butler, 286 S.C. at 442, 334 S.E.2d at 814.

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. The applicant must overcome this presumption in order to receive relief. Cherry v. State, 300 S.C. 115, 118, 386 S.E.2d 624, 625 (1989).

6

Courts use a two-pronged test to evaluate allegations of ineffective assistance of counsel. First, the applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under prevailing professional norms." Id. at 117, 386 S.E.2d at 625 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065). Second, counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 117-18, 386 S.E.2d at 625. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Johnson v. State, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997).

This Court finds Applicant's testimony is not credible while also finding trial counsel's testimony is credible. This Court finds counsel is a trial practitioner who has extensive experience in the trial of serious offenses. Counsel has been licensed since 2001 and began working with the Charleston County Public Defender's Office as a Staff Attorney in 2002, Counsel conferred with the Applicant on several occasions. During conferences with the Applicant, counsel discussed the pending charges, the elements of the charges and what the State was required to prove, discovery, Applicant's constitutional rights, and possible defenses or lack thereof.

Regarding Applicant's claims of ineffective assistance of counsel this Court finds Applicant has failed to meet his burden of proof. This Court finds counsel demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina. State v. Pendergrass, 270 S.C. 1, 5, 239 S.E.2d 750, 752 (1977); Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064-65; Butler, 286 S.C. at 442, 334 S.E.2d at 814. This Court further finds counsel adequately conferred with Applicant, conducted a proper investigation, and was thoroughly competent in her representation. This Court finds that counsel's representation did not fall below an objective standard of reasonableness.

This Court finds counsel properly communicated the plea offers to Applicant, and it was Applicant's decision to reject the plea offers. This Court finds Applicant understood the terms of the offers and knowingly chose to decline the offers. Counsel and Applicant testified Applicant rejected both plea offers. Counsel testified she investigated the Applicant's municipal court convictions and found he had not yet been convicted of shoplifting. She also learned he had gone before the municipal court on a simple assault charge but not for property crime enhancement. She then met with Applicant to discuss the second plea offer, and Applicant still did not want to plead guilty. This Court finds Applicant has considerable experience with the system, and finds no credibility to Applicant's claim he did not understand the plea offers or that counsel did not explain the offers to him.

This Court finds counsel made a valid strategic decision not to request a continuance

when the officer under subpoena was out of state and did not appear at trial. "There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in a case." Caprood v. State, 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000). Where trial counsel articulates a valid reason for employing a certain trial strategy, such conduct will not be deemed ineffective assistance of counsel. Roseboro v. State, 317 S.C. 292, 294, 454 S.E.2d 312, 313 (1995). Counsel's strategy will be reviewed under "an objective standard of reasonableness." Ingle v. State, 34S S.C. 467, 470, 560 S.E.2d 401, 402 (2002). Here, counsel testified she did not request a continuance because she did not think she needed the officer. This Court finds the officer was not critical to the identification issue and would not have corroborated an alibi. There are other witnesses who were more critical and instrumental to the identification issue. This court finds counsel's strategy was valid and reasonable.

This Court finds counsel properly challenged the identification. The identification issue was raised at trial and on appeal. Trial counsel requested a Neil v. Biggers hearing to challenge the show-up lineup, after which the trial court found the identification procedure was not unduly suggestive. (Tr. 55:16-19, 60:22-80:7.) The Court finds counsel fully explored the discrepancies in the descriptions of the Defendant, particularly the lack of a hat, which too was a valid strategy. However, the Court finds it came down to witness credibility and believability rather than inadequate representation by counsel.

This Court finds counsel properly challenged Applicant's two (2) prior burglary convictions. The State called Laurie Cicarelli, a SLED fingerprint expert, and Reina Gascon, an employee of the clerk of court's office, and counsel was able to cross-examine these witnesses. (Tr. 146:22-147:15, 154:7-156:1.) The State offered the two (2) prior burglary convictions as an element of burglary, first degree, rather than to prove Applicant committed this burglary. The State also mentioned the two (2) prior burglaries in its closing. (Tr. 180:16-182:8) The Court finds the State's comments were proper, and counsel had no basis to object or request a curative instruction, because S.C. Code Ann. § 16-11-311 requires as an element of burglary, first degree that the "the burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both." S.C. Code Ann. § 16-11-311(A)(2). This Court further finds the trial court gave the standard charge that the State must prove beyond a reasonable doubt the Applicant has a prior record of two (2) or more convictions for burglary. (Tr. 206:22-207:3.) The court further instructed the evidence of prior offenses was not offered to prove the Applicant's bad character or that he committed the burglary on this occasion, and such evidence may only be considered for the purpose of determining whether or not it satisfies the elements of first degree burglary. (Tr. 206:25-207:9.) The trial court also instructed the jury that before they could consider the evidence of Applicant's prior burglaries, they must first find the State has proven beyond a reasonable doubt that a burglary was committed, and only after they find a burglary was committed

may they consider the evidence of prior convictions. (Tr. 207:10-18.)

Accordingly, the Court finds the Applicant has failed to prove the first prong of the Strickland test, specifically that counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that counsel committed either errors or omissions in her representation of the Applicant. The Applicant failed to show that counsel's performance was deficient. The Court also finds the Applicant has failed to prove the second prong of Strickland, specifically that he was prejudiced by counsel's performance. Applicant's complaints concerning counsel's performance are without merit and are denied and dismissed.

## All Other Allegations

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, the Court finds the Applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds the Applicant waived such allegations and failed to meet his burden of proof regarding them. Therefore, they are hereby denied and dismissed.

## CONCLUSION

Based on the foregoing, the Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his trial or sentencing proceedings. Counsel was not deficient in any manner, nor was the Applicant prejudiced by counsel's performance. Therefore, this PCR application must be denied and dismissed with prejudice.

App. 287-95. On or around October 12, 2011, Petitioner, through PCR counsel, filed a motion under

S.C.R. Civ. P. 59(e) requesting the PCR court to alter or amend the final judgment because of

"misapprehension of evidence." App. 296. The motion alleged that the PCR court misapprehended

the evidence allegedly showing that Petitioner "clearly misunderstood or was not clearly offered the

plea bargain . . . and . . . that the existing judgment will cause or result in manifest injustice." *Id*. The

PCR court denied the motion by order dated October 25, 2011. App. 301-04.

A petition for writ of certiorari seeking review of the PCR court's final judgment was

submitted on Petitioner's behalf to the South Carolina Supreme Court on or about May 7, 2012. ECF

No. 29-6; *see Hamilton v. State*, No. 2011-203847. South Carolina Appellate Defender Robert M.

Pachak filed the petition as a "*Johnson* Petition" and requested to be relieved as counsel for

Petitioner.[4] *Id.* at 8. The petition for writ of certiorari raised the following issue quoted verbatim:

> Whether trial counsel was ineffective in failing to request a curative instruction when
> the prosecutor commented before the jury that petitioner had two prior convictions
> for burglary and he did not take the stand?

*Id.* at 3.

The South Carolina Supreme Court informed Petitioner of the filing of the *Johnson* petition

and told him that he could submit a pro se response to the petition. Petitioner filed a pro se brief on

or around June 11, 2012, raising the following points, again quoted verbatim:

> THE PCR COURT ERRED IN FAILING TO FIND COUNSEL RENDERED
> INEFFECTIVE ASSISTANCE WHEN COUNSEL FAILED TO FULLY
> COMMUNICATE THE STATE'S PLEA OFFER, SINCE COUNSEL TESTIFIED
> THAT PETITIONER DID NOT FULLY UNDERSTAND WHAT THE PLEA
> OFFER ACTUALLY WAS AND THAT PETITIONER WAS CONFUSED IN
> THAT COMMUNICATION?
>
> THE PCR COURT ERRED IN FAILING TO FIND COUNSEL RENDERED
> INEFFECTIVE ASSISTANCE WHEN COUNSEL FAILED TO REQUEST A
> CONTINUANCE TO SECURE OFFICER HARGROVE'S TESTIMONY DURING
> TRIAL?

ECF No. 29-7 at 2.

The South Carolina Supreme Court denied the petition and granted counsel's motion to

withdraw from representation on April 17, 2013. ECF No. 29-8. The appellate remittitur issued on

May 3, 2013. ECF No. 29-9.

II.    Discussion

    A.    Federal Habeas Issues

---

[4] *See Johnson v. State*, 364 S.E.2d 201 (1988) (appointed appellate counsel may move to withdraw
from representation after certifying a belief that the petition counsel filed is without merit).

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

GROUND ONE: Ineffective assistance of trial counsel in that counsel fail to move for a continuance. . . . where officer Hargrove testimony would have been material to establishing the alleged victim initial identification was less than certain but upon a second viewing did police rely while (2) policeman restraining him and being hand cuffed. The refusel [sic] to ensure the presents [sic] of a favorable witness was prejudicial to the Appellant.

GROUND TWO: Ineffective assistance of trial counsel in that counsel fail to request a curative instruction when prosecutor commuicated [sic] two prior convictions. . . . During opening arguments state prosecutor improperly commented to the jury prior record with two convictions for Burglary, House Breaking or a combination of Both in violation of Section 16-11-311 of South Carolina Code. Trial transcript pg. 52 line 19-22.

GROUND THREE: Ineffective assistance of counsel in that counsel fail to adeqately [sic] communicate plea offers. . . . On 6/30/06 the appellant requested his files appearing in exhibit "A", on 12/4/09 public defender responded appearing in exhibit "B" the file contained correspondence to Martha Runney [sic] public defendant negotiations of 15 yrs. marked exhibit "C" and "D" in return for a guilty plea the filed contained no 10 year negotiations. After trial and sentencing a newspaper article revealed a plea offer for 10 yrs was made to counsel attached and marked exhibit "E".

GROUND FOUR: Ineffective assistance of counsel in that counsel fail to adeqately [sic] challenge the identification. . . . Counsel refuse to establish by presenting questions during cross examination that would establish that during the initial identification the allege victim was uncertain afterward the appellant was instructed by police to place a doo ragg head covering on. Thereafter a subsequent identification process was initiated where the alleged victim identified the appellant. The failure of counsel to develope [sic] all the facts was prejudicial to the appellant.

Pet. 5-10, ECF No. 1.

B.      Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is

11

appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

    C.    Habeas Corpus Standard of Review

        1.    Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

a.    Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). Recently, the Supreme Court provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at _, 131 S. Ct. at 786-87. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." 131 S. Ct. at 786. In *Harrington*, the Court further stated: "If this standard is difficult

13

to meet, that is because it was meant to be." *Id*.; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court

factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.     Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id*. at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id*. at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at _, 131 S. Ct at 788 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 1399. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id*. at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the

writ. *Id*. The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at _, 131 S. Ct. at 785. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id*. (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.

### 2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate, but related, theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas-

corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

> (B)(i) there is an absence of available State corrective process; or

> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state-court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing a PCR application. State law requires that all grounds be stated in the direct appeal or PCR application. SCACR 203; *see* S.C. Code Ann. §§ 17-27-10 through 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR application in South Carolina courts. A PCR application must be filed within one year of judgment, or, if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or to the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas-corpus relief as to an issue failed to raise that

18

issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984). However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state

rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). To overcome Respondent's contention, it is Petitioner's burden to raise cause and prejudice or actual innocence. If not raised by Petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

### c.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96; *see Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice.

*Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### 3.    Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner bears the burden of proving an error and prejudice in his ineffective-assistance-of-counsel claim. *Id.*

## III.    Analysis

### A.    Procedurally Barred or Waived Grounds

#### 1.    The Parties' Positions

Respondent contends that Petitioner's Ground Four (regarding alleged ineffectiveness of trial counsel's attempts to challenge the victim's identification of Petitioner as the perpetrator of the burglary), is "procedurally barred because . . . [it] was not raised on appeal from the denial of PCR." ECF No. 29 at 17. Petitioner does not respond to Respondent's argument and does not assert that his Fourth Ground is not procedurally barred or that any procedural bar should be disregarded. In fact, there is no reference to Ground Four in Petitioner's Response. ECF No. 40. Respondent also contends that Ground One is procedurally barred or does not provide a basis for an evidentiary hearing because Petitioner allegedly did not establish "an evidentiary basis for this ground in state court." ECF No. 29 at 17-18. Review of the PCR transcript discloses that this issue was discussed during the testimony and arguments, App. 265-66, and it was one of the issues raised in Petitioner's

supplementary pro se brief in the PCR appeal. ECF No. 29-7 at 2. As a result, the undersigned finds that Ground One is not procedurally bypassed and will address the merits of Grounds One, Two, and Three below.

Because he presents no response to Respondent's Motion for Summary Judgment on Ground Four, the undersigned finds that Petitioner has waived this ground. *See Petrucelli v. Dep't of Justice*, No. 11–1780(RBW), 2014 WL 2919285, at *7 (D.D.C. June 27, 2014 (prisoner case; citing *Maydak v. DOJ*, 579 F. Supp. 2d 105, 107 (D.D.C. 2008), and holding that lack of response to a point raised in a motion for summary judgment amounts to a concession of that point); *see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."). However, review of the PCR pleadings and hearing transcript shows that Petitioner did not carry his burden under *Strickland v. Washington* of showing that trial counsel's attempts to challenge the identification through use of a *Neil v. Biggers* hearing and cross examination of the identifying victim and arresting law enforcement officials fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 687.

Accordingly, the undersigned recommends that Ground Four as stated in the Petition be dismissed and that Respondent's Motion for Summary Judgment on this ground be granted.

B.     Merits Analysis

The undersigned considers the merits of Petitioner's claims that his trial counsel was ineffective for failing to request a continuance when one of the arresting officers was not present for testimony, for failing to request a curative instruction when Petitioner's prior burglary convictions

22

were mentioned by the prosecution, and for failing to adequately communicate a plea offer to Petitioner. As to each of these grounds, is Petitioner's position (though not explicitly stated in the Petition), that the PCR court's decision is "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor*, 529 U.S. at 404-05 (quoting from § 2254(d)(1)); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (federal district court is charged with liberally construing a pleading filed by a pro se litigant to allow the development of a potentially meritorious case).

      1.     Ground One, Ineffectiveness of Trial Counsel: Failure to Request a Continuance to Secure Officer Hargrove's Testimony

            a.     The Parties' Positions

Respondent contends that Petitioner did not sustain his burden of proof on this ground because he did not present or proffer favorable testimony from Officer Hargrove that would have come in at trial had a continuance been requested and granted and had Hargrove testified. ECF No. 29 at 18. Respondent states that, without the introduction or proffer of such favorable testimony, any allegations of prejudice from the lack of a continuance are speculative. *Id*. Petitioner responds that trial counsel's failure to request a continuance deprived him of his constitutional right to confront Officer Hargrove about the discrepancies in the victim's identification of Petitioner as the perpetrator of the burglary. ECF No. 40 at 3. Petitioner contends that he was, therefore, deprived of due process, and that the PCR testimony showed trial counsel's "deficient performance." *Id*.

            b.     Petitioner Did Not Sustain His Burden of Showing That Trial Counsel Was Ineffective in Failing to Request a Continuance

The PCR court found that Petitioner did not sustain his burden of proving that trial counsel was ineffective insofar as her failure to request a continuance when it was determined that Officer Hargrove would not be in court to testify because counsel's testimony showed that her decision was a valid trial strategy. App. 292. The PCR court credited trial counsel's experience as a public defender, App. 291, and her PCR testimony to the effect that she did not think she needed Hargrove's testimony to support her efforts to challenge the "discrepancies" she noted in the victim's identification of Petitioner using "other witnesses who were more critical and instrumental to the identification issue." App. 293. The court found that trial counsel "properly challenged the identification" and "fully explored the discrepancies. . . ," before noting that the identification issue at Petitioner's trial "came down to witness credibility and believability rather than inadequate representation by counsel." App. 293.

Insofar as trial strategy is concerned in an ineffective-assistance-of-counsel claim, the United States Supreme Court has stated, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting from *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Further, the Court stated, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." 466 U.S. at 690 (citing to Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58 N.Y.U.L. Rev. 299, 343 (1983)). The Fourth Circuit Court of Appeals has also indicated that deference will be given to trial counsel's reasonable or plausible strategic decisions, particularly where there is no

24

clear showing of prejudice to the petitioner from such strategy. *See Emmett v. Kelly*, 474 F.3d 154, 167-69 (4th Cir. 2007) (finding no prejudice to petitioner from counsel's trial strategy not to call certain witnesses in mitigation); *Lovitt v. True*, 403 F.3d 171, 181 (4th Cir. 2005) (refusing to misuse "power of hindsight" to second guess trial counsel's "plausible strategic judgments.") (quoting from *Bunch v. Thompson*, 949 F.2d 1354, 1364 (1991)).

In this case, Petitioner's trial counsel testified at the PCR hearing that, even though she believed that the discrepancies in the identification process were Petitioner's strongest defense in the case, she did not think that they needed Officer Hargrove's testimony to argue those discrepancies. App. 254-55. Neither Petitioner nor his PCR counsel discussed what kind of testimony they thought Officer Hargrove would have provided had he testified. App. 265-66, 271. Additionally, review of the transcript of the *Neil v. Biggers* hearing held in connection with Petitioner's trial and of the trial transcript discloses that trial counsel argued the "vagueness" of the description given by the victim in her argument at the conclusion of the *Neil* hearing, App. 79, and attempted to convince the trial court to limit the victim's trial testimony about his percentage of certainty in the identification. App. 82. During trial, counsel closely questioned both the victim and Officer Rivers, one of the other arresting officers, about the circumstances surrounding the burglary, the description of the perpetrator given to law enforcement, and Petitioner's subsequent apprehension a few blocks away. App. 108-110, 118-19. The victim was examined about the lack of specificity in his description of the perpetrator and the differences in that description and the way Petitioner looked at the time he was apprehended and then identified by victim. Counsel particularly emphasized that the victim's description of the perpetrator's clothing included a hat, but that Petitioner did not have a hat on when he was apprehended and was only identified after police

officers had him put on a "doo-rag." App. 110. Counsel also closely questioned Officer Rivers about the vagueness of the victim's description, about the lack of a hat on Petitioner when he was apprehended, and about the police failure to conduct a further investigation into the information that Petitioner provided them about his reasons for being in the area at that time. App. 118-19. Trial counsel also included an assertion that "we have an unreliable identification by the victim . . ." in her argument in support of motions for directed verdict at the close of the state's case and of the trial. App. 162, 171. Her closing argument to the jury included significant references to the vagueness of the description given by the victim, App. 191, the absence of a "hat" in Petitioner's possession at the time of apprehension, App. 192, and about the degree of difficulty victims often have in properly identifying perpetrators. App. 193. Trial counsel also emphasized the lack of direct evidence presented by the state and the lack of further investigation of the case after the allegedly questionable identification of Petitioner. App. 193-95. The only thing Petitioner said in his PCR testimony about the absence of Officer Hargrove from the trial was that he asked trial counsel where the officer was and that he never showed up. There was no testimony about why he wanted Officer Hargrove to appear or what, if any, favorable testimony he expected from Hargrove. App. 266.

In light of record evidence showing considerable effort on trial counsel's part to discredit the disputed identification and to present Petitioner's "best defense," App. 254, and in absence of proffered testimony from Officer Hargrove that could have clearly aided Petitioner in that defense,[5]

---

[5] A petitioner's speculation as to what a witness' testimony might have been does not satisfy his burden of showing prejudice from either the denial of or failure to request a continuance. *See Bassette v. Thompson*, 915 F.2d 932, 939-41 (4th Cir. 1990) (petitioner required to proffer testimony from witness he says his attorney should have called); *see also Goins v. Warden, Perry Corr. Inst.*, 576 F. App'x 167, 173 (4th Cir. 2014) (same; failure to investigate claim); *Tate v. True*, 264 F. App'x 314, 320-21 (4th Cir. 2008) (same; failure to request a continuance when petitioner was

the undersigned finds that Petitioner has not shown that the PCR court's denial of post-conviction relief on the continuance point was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87. As such, Petitioner has not shown that the PCR court's findings and conclusions were contrary to, or an unreasonable application of, the *Strickland* standard. *See* 28 U.S.C. § 2254(e)(1) (to be entitled to habeas relief, petitioner must prove by clear and convincing evidence that the state court unreasonably determined the facts in light of the evidence presented in state court).

Accordingly, Petitioner's Ground One as stated in the Petition should be dismissed and Respondent's Motion for Summary Judgment on that ground should be granted.

> 2.    Ground Two, Ineffectiveness of Trial Counsel: Failure to Request a Curative Instruction When the Prosecutor Mentioned Petitioner's Prior Record

> a.    The Parties' Positions

Respondent contends that Petitioner did not sustain his burden of showing that trial counsel's failure to request a curative instruction regarding the State's presentation of evidence of his two previous burglary convictions showed ineffectiveness because the evidence was, in fact, admissible to prove an element of first-degree burglary. ECF No. 29 at 30. Petitioner responds that the PCR court's decision in this ground was erroneous because he did not take the stand in his trial or otherwise place his character into issue in the case. ECF No. 40 at 2.

> b.    Petitioner Did Not Sustain His Burden of Showing That Trial Counsel Was Ineffective in Failing to Request a Curative Instruction

---

drowsy).

The PCR court found that trial counsel was not ineffective in her representation insofar as the references to and admissibility of evidence of Petitioner's prior burglary convictions was concerned because the State was required to prove the prior convictions as an element of the charge of first-degree burglary. App. 294. The court noted that the standard jury charge on first-degree burglary requires such proof and that the trial court gave a limiting instruction to the jury, informing them that the prior convictions were not admitted to "prove . . . bad character" or that Petitioner committed the charged burglary. *Id.*

Federal habeas law indicates that trial counsel will not be found ineffective for not objecting to evidence that was admissible. *See, e. g., Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001); *Davis v. Cartledge*, No. 1:13-cv-2649 DCN, 2014 WL 5034629, *7 (D.S.C. Oct. 7, 2014). Where any objection to the contested evidence would have been overruled by the court under existing law, the general rule is that ineffective assistance is not shown by the failure to object. *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999). Under South Carolina law, as cited by Respondent, the State's presentation of Petitioner's prior burglary convictions to prove the elements of first-degree burglary was properly admitted. *See* S.C. Code Ann. § 16-11-311(A)(2) (two or more burglary or housebreaking convictions is an element of first-degree burglary); *State v. Washington*, 526 S.E.2d 709, 710-11 (S.C. 2000) (prior burglary convictions introduced as element of first-degree burglary does not result in double-jeopardy violation).

Review of the trial transcript shows that trial counsel made several unsuccessful objections to the State's use of Petitioner's prior record. App. 57, 59-60. There was also considerable discussion of whether or not a curative instruction was necessary or requested. App. 58, 61, 162. After the evidence of Petitioner's prior convictions was introduced, Petitioner's trial counsel

28

specifically determined and stated that no curative instruction would be requested. App. 162. Also, as the PCR court noted, the trial court did include limiting instructions to the jury about how that evidence could be considered. App. 148. Because any defense objection to the State's use of Petitioner's prior convictions would have been overruled, and because the trial court did, in fact, provide limiting instructions to the jury regarding the appropriate bounds of its consideration of that evidence, trial counsel's failure to request a curative instruction was not ineffective. As a result, the undersigned finds that Petitioner has not shown that the PCR court's findings and conclusions were contrary to, or an unreasonable application of, the *Strickland* standard. *See* 28 U.S.C. § 2254(e)(1) (to be entitled to habeas relief, petitioner must prove by clear and convincing evidence that the state court unreasonably determined the facts in light of the evidence presented in state court).

Accordingly, Petitioner's Ground Two as stated in the Petition should be dismissed and Respondent's Motion for Summary Judgment on that ground should be granted.

3.      Ground Three, Ineffectiveness of Counsel: Communication of Plea Offer

a.      The Parties' Positions

Respondent contends that the PCR court's finding that Petitioner's trial counsel adequately informed Petitioner of the second plea offer from the State is fully supported by the record showing that Petitioner personally rejected both plea offers and by the PCR judge's determination that trial counsel's testimony was credible, but Petitioner's was not. ECF No. 29 at 32-34. Petitioner responds that he first learned of the second plea offer through a newspaper article after his trial and that trial counsel was ineffective for failing to "relay, inform or advise him of plea offer by the State for ten (10) years . . . ." ECF No. 40 at 2.

29

          b.      Petitioner Did Not Sustain His Burden of Showing That Trial Counsel Was Ineffective in Her Communications Regarding the Second Plea Offer

The PCR court found that trial counsel "properly communicated the plea offers . . ." to Petitioner and that trial counsel's testimony in this regard was more credible than Petitioner's. App. 292. The PCR court found that Petitioner "has considerable experience with the system . . . ," and that his testimony to the effect that he did not fully understand the sentencing details of the second plea offer was not credible. *Id*. The PCR court concluded that Petitioner did not sustain his burden under *Strickland* of showing that his trial counsel's representation was deficient or that he was prejudiced by counsel's performance. App. 294.

The applicable law in this area holds that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012); *see Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (counsel may be found ineffective for unreasonably advising client to reject a plea offer); *Davie v. State*, 675 S.E.2d 416, 420 (S.C. 2009) (adopting "rule that counsel's failure to convey a plea offer constitutes deficient performance"). Also, a PCR court's credibility findings are entitled to deference by this court. *Wilson v. Ozmint*, 352 F.3d 847, 858-859 (4th Cir. 2003). "[F]ederal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008).

The proper resolution of this ground necessarily rests on the reasonableness of the PCR court's credibility determination in favor of the testimony provided by trial counsel. Trial counsel testified that she has been employed with the Charleston County Public Defender's Office since

30

2001 and that she met with Petitioner at least three times before his trial began. App. 257. She testified that Petitioner had previously rejected a plea offer that would result in a fifteen-year sentence before she took over his case. App. 258. She also testified that at one of her personal meetings with Petitioner, she informed him that the State had offered to drop the first-degree burglary charge if Petitioner would plead guilty to two "property enhancement" charges. App. 249-50. Although counsel could not remember the exact conversations between herself and Petitioner, she did state that she informed him of the plea offer, they discussed it, and Petitioner was confused about whether or not he had already pleaded guilty to at least one of the property enhancements in magistrate court. App. 251, 261. She stated that she contacted the magistrate court after their discussion to determine what Petitioner had pleaded to and discovered that it was not one of the pending property enhancement charges. App. 252. Referring to her notes, counsel testified that she then had another personal meeting with Petitioner, and that, although she did not recall any of the details of their conversations, Petitioner "did not want to plead." App. 252-53. In response to examination by the State, trial counsel clearly stated that she communicated the second plea offer to Petitioner and that it was Petitioner's decision to reject the offer. App. 259.

Although Petitioner testified that he was confused about the second plea offer because he did not understand the amount of time he might have to serve in prison under that plea, App. 263, 265, 296, he acknowledged that he did meet with trial counsel and that she did tell him that the State offered to drop the first-degree burglary charge if he pleaded guilty to two property enhancements. App. 269. Petitioner testified that he only met with trial counsel one time and that was when she told him about the State's offer to drop the first-degree burglary charge if he pleaded guilty to two property enhancements. App. 263. Regarding trial counsel's discussion of second plea offer with

him, Petitioner testified that he "didn't really understand what she [trial counsel] was talking about really," App. 264, so he rejected the second plea offer and went to trial. App. 269. Although Petitioner alleges in his Response to Motion for Summary Judgment that he first learned about the second plea offer from a newspaper article he saw after his trial, ECF No. 40 at 2, he does not mention anything about a newspaper article in his PCR testimony. App. 260-69.

While there was some conflicting PCR testimony about Petitioner's understanding of every aspect of the second plea offer, both witnesses testified that trial counsel conveyed the offer to Petitioner before his trial and both testified that he rejected it of his own free will. To the extent that the conflicts in the testimony regarding Petitioner's understanding of the details of the offer were relevant to its decision on the claim of ineffective assistance of counsel, the PCR court decided that trial counsel's testimony was more credible. App. 292. Because the PCR court had the opportunity to hear and observe both Petitioner and trial counsel in person, this court should defer to that credibility determination. This deference is even more appropriate in this case where Petitioner now appears to refute his PCR testimony regarding how and when he learned of the second plea offer by alleging that a post-trial newspaper article provided the information even though his PCR testimony was that trial counsel informed him of the offer before he went to trial. Petitioner's PCR testimony did not include references to discovery of the second plea offer through a newspaper article. App. 263, 269.[6]  Petitioner's self-serving, post-conviction assertions of lack of understanding of the details of the plea offer that he acknowledged in his PCR testimony was conveyed to and rejected by him personally are insufficient to overcome the more credible testimony from his trial counsel that the offer was fully conveyed. *See, e.g., Young v. Stephens,* No. MO-07-CA-002-RAJ, 2014 WL

_____

[6] The first reference to the newspaper article is in the Petition in the case. ECF No. 1 at 8.

2628941, * 8 (W.D. Tex. June 13, 2014) (state court properly discounted petitioner's claims of un-conveyed plea offers where petitioner "testified out of both sides of his mouth . . ." about the alleged offers); *Blanco v. Buss*, No. 07-61249-CIV, 2011 WL 9933763, **6-7 (S.D. Fla. Mar. 29, 2011) (state court properly discounted petitioner's assertion of inadequate understanding of conveyed plea offer); *Jordan v. Ballard*, No.12-1015, 2013 WL 5476421 (W. Va. Oct. 1, 2013) (discounting petitioner's assertion of lack of understanding of plea offer where he had reason to lie about the issue after conviction and he did not tell his counsel he did not understand). Review of the record in this case discloses that the PCR court's credibility determination was reasonable, as was its finding that trial counsel exercised reasonable professional competence in connection with her conveyance of the second plea offer. Petitioner has not shown that the PCR court's findings and conclusions regarding conveyance of the second plea offer were contrary to, or an unreasonable application of, the *Strickland* standard. *See* 28 U.S.C. § 2254(e)(1) (to be entitled to habeas relief, petitioner must prove by clear and convincing evidence that the state court unreasonably determined the facts in light of the evidence presented in state court).

Accordingly, Petitioner's Ground Three as stated in the Petition should be dismissed and Respondent's Motion for Summary Judgment on that ground should be granted.

IV.     Conclusion

The undersigned has considered each of Petitioner's grounds for habeas-corpus relief and recommends that each be dismissed. It is recommended that Respondent's Motion for Summary Judgment, ECF No. 28, be GRANTED and that the Petition in this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED.


November 17, 2014                          Kaymani D. West
Florence, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

34

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).